

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MEAGHAN DOHERTY | CIVIL ACTION |
| VERSUS | NO: 19-11790 |
| NATIONAL BOARD OF MEDICAL EXAMINERS | SECTION: T |

### ORDER

Before the Court is an application for a preliminary injunction[1] filed by Meaghan Doherty ("Plaintiff") seeking an order directing the National Board of Medical Examiners ("NBME") to grant Plaintiff's request for reasonable testing accommodations of time and a half when she takes the Step 2 CK Examination on Tuesday, August 6, 2019. For the following reasons, the Plaintiff's application for a preliminary injunction is **GRANTED.**

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a medical student at Tulane University School of Medicine who has been diagnosed with Specific Learning Disorder with impairment in reading rate, Attention-Deficit/Hyperactivity Disorder ("ADHD") Combined Type, and Generalized Anxiety Disorder. Plaintiff is required to pass the Step 2 CK Examination as a condition of graduation and to participate in residency placement in September 2019. Plaintiff applied to take the exam and requested test-taking accommodations of additional time. The NBME denied Plaintiff's request for accommodations reasoning, in part, that the Plaintiff did not demonstrate a "substantial limitation in a major life activity as compared to most people."[2] Plaintiff is scheduled to take the examination without accommodations on August 6, 2019.

---

[1] R. Doc. 1.
[2] R. Doc. 1-5, p. 6.

On July 22, 2019, Plaintiff filed under seal an Application for Temporary Restraining Order with Equitable Relief and Order to Show Cause Why a Preliminary Injunction Should Not Issue.[3] On July 26, 2019, the Court denied Plaintiff's request for a temporary restraining order and set the request for preliminary injunction for hearing,[4] which was conducted on August 1, 2019. The Court allowed the parties to file post-hearing briefs by 12:30 p.m. on August 2, 2019.

Plaintiff claims she is entitled to additional time in taking the Step 2 CK Examination because she is an individual with a disability as defined by the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.* Plaintiff testified that she was first diagnosed with dyslexia and dysgraphia in 2003 when she was ten years old.[5] In 2006, Plaintiff was diagnosed with ADHD and prescribed Adderall.[6] Although she struggled with her disability from elementary school through college, Plaintiff worked hard to excel in school without requesting any testing accommodations because she was concerned with the stigma associated with her disabilities. Plaintiff testified that, rather than accept direct accommodations, she worked hard to overcome her dyslexia and ADHD issues, and that she continues to take Adderall to this day for her ADHD.

In 2017, Plaintiff was evaluated by a licensed psychologist, Dr. Patricia Brockman, who diagnosed Plaintiff, pursuant to criteria in the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-V), with Learning Disorder with Impairment in Reading: rate (DSM-V 315.00 ICD-10 F81.0), Attention Deficit/Hyperactivity Disorder – Combined Type (DSM-V 314.01 ICD-10 F*), and Generalized Anxiety Disorder (DSM-V 300.02 ICD-10 F41.1).[7] Dr. Brockman determined that "timed measures consistently underestimate" Plaintiff's skills, and

---

[3] R. Doc. 1.
[4] R. Doc. 6.
[5] R. Doc. 1-6, p. 6.
[6] R. Doc. 1-5, p. 14.
[7] R. Doc. 1-5, pp. 31-32.

that Plaintiff "needed accommodation of extended time to produce fair and unbiased measures" of her skills.[8] Dr. Brockman's testing established that Plaintiff's reading speed is slower than 90% of students her age and that her reading "decoding" speed was slower than 75% of students against the general population. On the timed portion of the Nelson Denny Reading Test, Plaintiff's reading speed fell in the borderline or slow learner range at the 6th percentile of all readers.[9] Although the NBME in its post-hearing brief has challenged the reliability of that specific test, Dr. Brockman had explained in an addendum to her original report, prepared in response to the NBME's rejection of Plaintiff's request for accommodations, that "the NDRT is one of the most widely administered reading tests in the nation and is used by many medical schools to gauge reading ability."[10]

Plaintiff's treating physician, Dr. James Barbee, explained in a 2017 letter submitted in evidence that he diagnosed Plaintiff in 2014 with ADHD, predominately hyperactivity-impulsivity presentation (DSM-V F-90.1) based on the criteria in the DSM-V. He opined that Plaintiff was diagnosed with ADHD in 2003, that she continues to have difficulty sustaining concentration when studying and during tests, and that she is currently prescribed Adderall XR, 30 mg twice per day.[11]

Plaintiff started at Tulane University School of Medicine in 2016, and first applied for testing accommodations on written tests at the start of her second semester in January 2017. Based on Dr. Brockman's evaluation and Dr. Barbee's diagnoses, as well as her 2003 and 2004 evaluations, Tulane University granted her request and provided her accommodations on written tests of time and a half. Plaintiff testified that her testing performance on written exams, like the NBME's Step 1 and 2 Examinations, dramatically improved by 20% once she received additional time for testing. In 2018, Plaintiff requested additional time for testing during the Step 1

---

[8] R. Doc. 1-4, pp.18-35.
[9] R. Doc. 1-5, p. 32.
[10] R. Doc. 1-5, p. 40.
[11] R. Doc. 1-4, p. 47.

Examination, but the NBME denied her request. Plaintiff took the examination without accommodations and scored a 200. Plaintiff testified that a minimum passing score for the Step 1 Examination is a 194 and that the mean score was 228. She testified in detail that she did not believe her score on the Step 1 Examination without the requested accommodations reflected her knowledge of the material, but instead reflected her disability.[12] She further explained that her score, albeit a passing one, would negatively impact her ability to obtain a residency in obstetrics/gynecology, her preferred field, because it was far below the range of scores of students who ultimately obtained residencies in obstetrics/gynecology.[13]

The Step 2 CK Examination is a nine-hour multiple choice test divided into eight 60-minute blocks. Once the time for each section has expired, the examinee cannot return to complete the section. Each question is a written passage with multiple-choice options to select as the answer. Unanswered questions are counted as wrong answers. The results of the Step 2 CK Examination are a component of the criteria used in evaluating medical school candidates for interviews to participate in residency programs. Plaintiff testified that the applications are reviewed on a rolling basis between September 15, 2019, and November 30, 2019, and that obtaining a residency position is highly competitive. Plaintiff is scheduled to take the Step 2 CK Examination on August 6, 2019, without testing accommodations because the NBME denied her request for test-taking accommodations of additional time.

## LAW AND ANALYSIS

---

[12] The Step 1 Examination, like the Step 2 Examination, is a "mastery test." *See Rush v. National Bd. of Medical Examiners*, 268 F.Supp.2d 673, 675 (N.D. Texas 2003). "With a mastery test, the test taker either knows the material and passes the exam, or he does not know the tested-for material and fails the exam. Time constraints for most individuals who take this test are not of major consequence because the majority of medical students possess the reading and processing efficiency needed to work through the test and the set of possible answers within the time constraints that are allowed. *This is not true however, for individuals with reading disabilities.*" *Id.* (emphasis supplied).

[13] *See also* R. Doc. 1-8, p. 54.

4

A preliminary injunction is an extraordinary equitable remedy that may be granted only if a plaintiff establishes the following four elements: "(1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause [the] defendant[ ]; and (4) that the injunction will not disserve the public interest."[14] Mandatory preliminary relief that goes beyond maintaining the status quo is particularly disfavored and should not be issued unless the facts and law clearly favor the moving party.[15]

42 U.S.C. § 12189 requires entities that offer licensing examinations to give examinations "in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12102(1)(A)-(B) defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual" or a "record of such impairment." An impairment is considered a disability under the ADA if it "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population."[16] Major life activities include, among other activities, "learning, reading, concentrating, thinking, writing, [and] communicating."[17]

Plaintiff has demonstrated to the satisfaction of this Court a substantial likelihood of success on the merits. The totality of the evidence and testimony presented in this case establishes that Plaintiff is an individual with a disability under the ADA because she is substantially limited in the major life activities of reading when compared to most people in the general population. Plaintiff produced evidence showing that she has a history of impairment in reading based on

---

[14] *S. Co. v. Dauben Inc.,* 324 F. App'x 309, 314 (5th Cir. 2009) (quoting *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 265 (5th Cir.1999)); Fed. R. Civ. P. 65.
[15] *Exhibitors Poster Exch., Inc. v. National Screen Serv. Corp.*, 441 F.2d 560, 561–62 (5th Cir.1971)(per curiam); *Miami Beach Federal Savings & Loan Ass'n v. Callander,* 256 F.2d 410, 415 (5th Cir.1958).
[16] 28 C.F.R. § 36.105(d)(1)(v).
[17] 28 C.F.R. § 36.105(c)(1).

current professional evaluations in accordance with the accepted standard of clinical review of the DSM-V. Plaintiff was diagnosed with dyslexia and dysgraphia as early as the age of 4. Dr. Barbee diagnosed Plaintiff in 2014 with ADHD-Combined Type and has prescribed Adderall, which Plaintiff has taken since she was a girl. Dr. Brockman's testing and evaluation revealed that Plaintiff suffers from ADHD, has a specific learning disability in reading, and that she suffers from generalized anxiety disorder. Dr. Brockman made the following conclusions:

> [Plaintiff's] overall achievement fell in the superior range and it was generally consistent with her overall intelligence. When given the use of a calculator, her overall achievement was even stronger. Significant variability was noted in [Plaintiff's] educational skills, with relative strengths noted in her very superior Oral Language and superior Mathematics Composites. Her Written Expression and Reading Comprehension fell in the high average range and was stronger than the timed measures of her Reading Comprehension on the Nelson Denny. Significant variability was noted in [Plaintiff's] reading skills. The accuracy of her sight vocabulary fell in the high average range but her ability to decode words fell at the low end of the average range. The most remarkable observation was [Plaintiff's] slow reading and decoding speed. On the measure of her sight vocabulary, [Plaintiff's] reading speed was slower than 90% of students her age and her decoding speed was slower than 75% of students her age. On the timed Nelson Denny subtest, [Plaintiff's] Reading Speed fell in the borderline or slow learner range at the 6th percentile. This indicated a Specific Learning Disorder with Impairment in Reading: rate (DSM-V 315.00 ICD 10 F81.0). This creates a Functional Impairment for which accommodation of extended time is needed to produce fair and unbiased measures of [Plaintiff's] skills on academic and daily tasks where reading is required.[18]

Dr. Brockman's professional conclusions are consistent with Plaintiff's testimony regarding her ability to score well on standardized testing, such as the Medical College Admissions Test (MCAT). Where the questions presented were composed of vignettes, even lengthier ones, with multiple questions, as on the MCAT, she performed well. However, where the vignette was followed by a single question, such as the NBME Step Examinations, she did not perform as well as would be expected for her overall intelligence and mastery of the material. She attributed this

---

[18] R. Doc. 1-5, p. 32.

difference to the overall length of time allowed per question, with more time per question on the MCAT than on the Step Examination, and thus, to her, the testing results revealed her slow reading disability rather than demonstrating her knowledge of the material. Plaintiff testified that her performance on testing with a similar format to the Step Examination, when administered by Tulane with accommodations, was 20 percent better than her results without accommodations.

The evidence and testimony clearly support that Plaintiff has an impairment that substantially limits her in the major life activities of reading when compared to most people in the general population. Defendant, during the hearing and in its post-hearing brief, attempts to paint a portrait of the Plaintiff far different than the Court observed at the hearing of this matter. To the Defendant, Plaintiff is attempting to achieve an unfair advantage over other medical school students. As evidence of this, Defendant points out that Plaintiff has always performed well in school and yet never sought an accommodation until she became a medical student. However, Defendant ignores the record medical evidence documenting Plaintiff's disability, the description in evidence of how overcoming her disability inspired her activities, and more importantly her credible explanation for not seeking accommodations earlier in her academic career.

Plaintiff should not face discrimination, and the ADA does not countenance such discrimination, because she is intelligent and has previously performed well academically. The medical evidence in the record, which was not objected to by the Defendant, nor for that matter controverted, establishes that Plaintiff has a disability that substantially limits a major life activity, namely reading, and that her reading ability was in 2017 determined to be as low as just the 6th percentile of the general population on the Nelson Denny Reading Test. Someone who is disabled should not be penalized because they were able to compensate to some degree for their limitations or because they chose not to seek accommodations when they were first able to do so. It appears

to the Court that Plaintiff would have been entitled to accommodations as early as elementary school, but she made a conscious decision that she would rather not be seen as different by the other students.

Next, Plaintiff has shown a substantial threat that she will suffer irreparable injury if the injunction is denied. Defendant has not undermined Plaintiff's showing of irreparable harm should she not be allowed to take the August 6, 2019 Step 2 Examination with accommodations. This includes the following facts established at the hearing, if Plaintiff were to take the examination any later than August 6, 2019, or worse, take the test without accommodations and fail or score poorly: (1) she would be at an irreparable disadvantage in securing residency interviews and obtaining a match; (2) she would suffer financially having to pay for an additional year of tuition, as well as the delay in earning an income as a resident for an entire year; (3) she would incur a permanent blemish on her academic record, which could not be removed; and (4) she would be placed in very real danger of not being able to complete medical school. It is rather disingenuous of Defendant to minimize the possible and real consequences faced by Plaintiff should she not be allowed to take the Step 2 CK Examination on August 6, 2019, with the requested accommodations. Although Plaintiff acknowledged on cross-examination that there are avenues to matching available to students who do poorly on the Step 2 Examination or fail it initially, she explained that the stigma of the delay or, worse, having to take a leave of absence to sit for the exam a second time, especially coupled with her underwhelming score on the Step 1 Examination without accommodations, would be nearly insurmountable in obtaining a match with a desired or preferred residency program. The lost opportunity to engage in one's preferred occupation goes beyond monetary deprivation.[19] With the requested reasonable accommodation of time and a half

---

[19] *Bonnette v. District of Columbia Court of Appeal*, 796 F.Supp.2d 164, 186-87 (D.D.C. 2011).

to take the Step 2 Examination, "Plaintiff will have time to either display [her] mastery of the subject matter, or show that [she] has not sufficiently mastered the tested materials. In either event, granting the injunction will allow Plaintiff to be tested on [her] medical and science knowledge and not [her] disability."[20]

Next, the Court finds the threatened injury to Plaintiff clearly outweighs any damage that granting the preliminary injunction might cause to the NBME or to the public. The cost and effort to accommodate Plaintiff is minimal. Furthermore, although Defendant suggests the integrity of the examination and licensing procedure will be compromised, the requested accommodations will not change the testing format or the time-based system as applied to students without a documented disability within the meaning of the ADA.

Finally, this Court finds the requested injunction will not disserve the public interest, but will instead further the public interest in prohibiting discrimination on the basis of disability and in fulfilling the ADA's requirement that entities offering licensing examinations provide reasonable accommodations to disabled individuals.[21] As Plaintiff points out, all she is asking for is a level playing field, and the ADA was intended to afford such to all citizens.

The Court's decision to grant the preliminary injunction today is based upon the applicable law, the facts established at the hearing of August 1, 2019, and its finding that Plaintiff was a credible witness in every respect of her testimony.

## **CONCLUSION**

Accordingly, for the foregoing reasons,

---

[20] *Rush, supra*, p. 678.
[21] Id.

**IT IS ORDERED** that the National Board of Medical Examiners allow Plaintiff Meaghan Doherty testing accommodations of time and a half when she takes the Step 2 CK Examination on Tuesday, August 6, 2019.

This preliminary injunction is binding upon the National Board of Medical Examiners, its officers, agents, servants, employees, and attorneys, and upon those persons administering the Step 2 CK Examination who are under contract with the National Board of Medical Examiners or in active concert or participation with them who receive actual notice of this Order.

**New Orleans, Louisiana**, on this 5th day of August, 2019.

                                              **GREG GERARD GUIDRY**
                                          **UNITED STATES DISTRICT JUDGE**