UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MEAGHAN DOHERTY,**<br><br>       **Plaintiff,**<br><br>    v.<br><br>**NATIONAL BOARD OF MEDICAL EXAMINERS,**<br><br>       **Defendant.** | **Civil Action No. 19-11790**<br><br>**Judge: The Hon. Greg G. Guidry**<br><br><u>**UNDER SEAL**</u> |

**Memorandum in Support of Defendant's Expedited Motion to Clarify
and, If Necessary, for a Stay Pending Appeal**

National Board of Medical Examiners ("NBME") respectfully asks this Court to clarify on an expedited basis whether the preliminary injunction entered August 5, 2019 ("Order"), ECF Dkt. No. 20, requires NBME to release Plaintiff Meaghan Doherty's Step 2 Clinical Knowledge ("Step 2 CK") score to Plaintiff, to the Electronic Residency Application Service ("ERAS"), and to other third parties in the ordinary course, as soon as that score is ready to be reported. NBME anticipates that the score will be reportable to Plaintiff on September 4, 2019.

Although Plaintiff requested an injunction that ordered NBME to provide her with extra testing time and release her score, the Order required only that NBME provide Plaintiff 50 percent extra time on the Step 2 CK, beginning on August 6, 2019. Plaintiff has now tested with the extra testing time required by the Court. Subject to clarification to the contrary, NBME understands that it has fulfilled its obligations under the preliminary injunction and need not release Plaintiff's score in the ordinary course, pending a ruling by the U.S. Court of Appeals for the Fifth Circuit on NBME's pending Notice of Appeal from the preliminary injunction.

But if the Court clarifies that its Order was intended to require NBME to release Plaintiff's score after Plaintiff tested with extra testing time and orders NBME to report the score

145365132.2

by September 4, 2019, NBME moves to stay the injunction as so clarified pending appeal. The Order should be stayed because (1) NBME is likely to succeed on the merits of its appeal, (2) NBME will be irreparably harmed absent a stay, (3) Plaintiff will not be substantially injured if a stay issues, and (4) the public interest weighs in favor of a stay. NBME respectfully requests an expedited ruling by **August 26, 2019** to permit the Court of Appeals, if necessary, to decide an emergency stay request from NBME in an orderly manner, without imposing unduly on that Court.

## BACKGROUND

The Court is familiar with the facts, and a more detailed summary appears in NBME's Post-Hearing Brief, ECF 15, at 4-11. NBME is responsible for administering fair test procedures across test takers, and if Plaintiff unfairly receives additional time, it injures other test takers. Plaintiff maintains she is "disabled" by comparing herself to an elite slice of students, but that is not how "disability" is determined under the Americans with Disabilities Act ("ADA").

### A.     National Board of Medical Examiners

NBME is a nonprofit organization that, together with the Federation of State Medical Boards, sponsors the United States Medical Licensing Examination ("USMLE"). ECF 15, at 4; Declaration of Michael Barone ("Decl.") ¶ 2. The USMLE "Step" exams, including the Step 2 CK, are standardized tests that medical licensing authorities across the country rely on as part of their licensure process. ECF 15, at 4. Residency programs also rely on USMLE scores in evaluating residency applications. Decl. ¶¶ 12-13.

All examinees take the USMLE exams under the same testing conditions, other than individuals who are disabled within the meaning of the ADA. ECF 15, at 4. NBME provides reasonable testing accommodations to disabled examinees and conscientiously evaluates each request for accommodations. *Id.* NBME's procedures are "designed to ensure that individuals

-2-

with *bona fide* disabilities receive accommodations, and that those without disabilities do not receive accommodations that they are not entitled to, and which could provide them with an unfair advantage when taking the medical licensing examination." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 88–89 (2d Cir. 2004).

### B.  Meagan Doherty

Meaghan Doherty is a medical student in her final year at the Tulane University School of Medicine.  ECF 20, at 1.  She claims to be disabled under the ADA based on diagnoses of a learning disability, Attention Deficit Hyperactivity Disorder, and Generalized Anxiety Disorder, and entitled to 50 percent extra testing time on the Step 2 CK.  *Id.* at 2.

Plaintiff has excelled academically since a young age.  ECF 15, at 5.  In elementary through high school, Plaintiff was "accustomed to being a top performer," was told by teachers she was "a great student," and "always made honor roll."  ECF 1-4, at 9-10.  She purportedly received reports from healthcare providers that she suffered from impairments, *see id.* at 9—none of which reflected below-average reading abilities, *see* ECF 15, at 7-8—but she "refused all the accommodations the school offered," ECF 1-4, at 9.  She received no accommodations, formal or informal, until medical school, *Id.* at 6-7, and was an exceptional student.

Plaintiff likewise excelled on standardized tests that required reading under time pressure. She scored in the top one percent of examinees who took the ACT college admissions test in 2010.  *Id.* at 51.  On the SAT, Plaintiff scored in the top 16 percent on the "Critical Reading" subtest.[1]  *Id.* at 50; *see Love v. Law Sch. Admission Council, Inc.*, 513 F. Supp. 2d 206, 227 (E.D. Pa. 2007) (noting that the ACT and SAT "are strictly timed and . . . involve reading and processing information").  Plaintiff earned 21 college credits based on strong scores on her high

---

[1] *See* College Board Percentile Ranks for 2011 College-Bound Seniors, available at https://secure-media.collegeboard.org/digitalServices/pdf/SAT-Percentile_Ranks_2011.pdf.

school Advanced Placement ("AP") exams.  ECF 1-4, at 20.  And Plaintiff performed exceptionally well on the MCAT, scoring—on her first try—in the top 12 percent of all test-takers between January 2012 and September 2014, with a Verbal Reasoning score in the top five percent.  *Id.* at 49.  Again, Plaintiff earned these outstanding scores without extra testing time or any other accommodations.

In medical school, when she was no longer at the top of her class, Plaintiff went to see a psychologist, Dr. Brockman, for an evaluation so she could "request accommodations."  *Id.* at 18.  Dr. Brockman's report starts by noting—incorrectly—that Plaintiff "received accommodations throughout her elementary and high school years."  *Id.*  It then notes that Dr. Brockman administered a battery of tests, all but one of which reflected average to superior skill in reading.  *Id.* at 36-41.  Plaintiff scored in the sixth percentile on a single, one-minute subset of the Nelson Denny Reading Test, and Dr. Brockman relied primarily on that result in diagnosing Plaintiff with a learning disability in reading that, in her view, warranted extra test time.  *Id.* at 34, 41.  In an Addendum to the evaluation, Dr. Brockman explained that percentile scores on the Nelson Denny Reading Test are not based on the general population but rather "the educational level that most closely resembles the individual being tested."  ECF 1-5, at 41.

Relying on Dr. Brockman's evaluation, Plaintiff requested and was granted an accommodation of time and a half on written tests at Tulane University School of Medicine.  ECF 1-4, at 7.  She subsequently requested accommodations for Step 1 of the USMLE.  *Id.* at 11.  NBME denied the request and Plaintiff passed under standard conditions.  *Id.*  The score report shows that Plaintiff's passing score, albeit lower-than-desired, reflected relatively poor performance on three subjects, not a shortage of time.  ECF 1-5, at 7-8.  Plaintiff requested accommodations for the Step 2 CK.  When her request was denied, she sued NBME.

-4-

### C. Procedural History

Plaintiff did not file a complaint. Instead, she initiated this action by filing an Application for Temporary Restraining Order with Equitable Relief and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("Application"). ECF 1. The Application, filed July 22, 2019, alleges NBME violated the ADA by denying Plaintiff's request for extra time on the Step 2 CK. *Id.* at 15-17.

Plaintiff's Application sought a mandatory injunction requiring NBME to (1) administer the test with 50 percent extra time, on August 6, 2019, and (2) expedite grading her exam and provide the results by August 30, 2019. *Id.* at 18-19. Plaintiff also moved, in effect, to file all documents in the case under seal, asking the court to seal her Application and supporting documents, all medical records, and any pleading that "references plaintiff's disabilities or medical history or diagnoses." ECF 2 (July 22, 2019). Three days later, this Court issued a one-page *ex parte* sealing order, ECF 4 (July 25, 2019), barring even the parties' access to the on-line docket. The next day, this Court denied Plaintiff's request for a temporary restraining order, finding that she failed to satisfy Federal Rule of Civil Procedure 65, but set a hearing on Plaintiff's request for a preliminary injunction for August 1. ECF 6. All of these events occurred before NBME was served.

NBME was served with a Summons and a copy of Plaintiff's Application two days before the hearing (a copy of the Application had been sent to NBME on July 23 by Federal Express). *See* ECF 15, at 1. Because NBME had insufficient time to obtain local counsel, put on evidence, file a brief, or even attend in person, its out-of-town counsel requested and was granted permission to participate by telephone. Plaintiff put on a single witness: the Plaintiff. NBME requested permission to file a post-hearing brief, and the parties were given until 12:30 p.m. the next day to do so. ECF 20, at 2.

The Court issued its Order on Plaintiff's Application on August 5, 2019, granting her request for a mandatory preliminary injunction and ordering NBME to administer the Step 2 CK to Plaintiff the next day, on August 6, with 50 percent extra time. *Id.* at 10. NBME complied with the Court's order, going to extraordinary efforts to do so (including changing her test registration from a one-day to a two-day test administration—a process which typically takes multiple days to accomplish—and requesting that the third-party entity that administers the test keep one of its testing centers open after normal hours to permit Plaintiff to test).

On August 9, NBME filed its Notice of Appeal. ECF 21.

## ARGUMENT

Plaintiff is not "disabled" and should not have received additional time. Her receiving extra time was unfair to other test takers and injures them and the integrity of the examination process, and for that reason, NBME has appealed. For present purposes, the issue is what to do with Plaintiff's score. The Order does not require releasing it. NBME requests that the Court clarify whether its preliminary injunction was intended to require NBME to report Plaintiff's Step 2 CK score to Plaintiff, ERAS, and other third parties in the ordinary course once the score becomes reportable. Unless instructed otherwise, NBME assumes it need not do so because the Court's order contains no such directive. If the Court clarifies to the contrary, however, NBME requests a stay pending appeal and an expedited ruling by August 26, 2019.

**I.      NBME requests clarification on the scope of the preliminary injunction.**

NBME asks the Court to clarify whether the preliminary injunction was intended to require NBME to (1) report Plaintiff's Step 2 CK score to Plaintiff (which would occur no later than September 4, 2019), and (2) submit the score to ERAS as part of her USMLE transcript in the ordinary course (which could occur as early as September 10, 2019).

The Court's Order is notably different from what Plaintiff asked for in this regard. Plaintiff specifically sought an injunction that would—in addition to giving her 50 percent extra time on the Step 2 CK, administered August 6 and 7—require NBME "to expedite the grading of Plaintiff's Step 2 CK Exam and to provide Plaintiff . . . with the results of same by email not later than 4:00 p.m. on Friday, August 30, 2019." ECF 1, at 19.[2] Despite this specific request, the Court did not order NBME to release Plaintiff's Step 2 CK score. *See* ECF 20. Rather, the Court only provided that NBME must "allow Plaintiff Meaghan Doherty testing accommodations of time and a half when she takes the Step 2 Examination on Tuesday, August 6, 2019." *Id.* at 10. As described above, NBME has fully complied with the injunction.

Because the preliminary injunction does not require NBME to release Plaintiff's score—despite her explicit request that such relief be included—NBME assumes this omission was intentional and it has fully complied with the Order. Plaintiff will likely contend otherwise. Absent clarification to the contrary, however, NBME will not report Plaintiff's Step 2 CK score to Plaintiff or submit it to ERAS unless the injunction is upheld on appeal because the score is not part of the Order and NBME believes it would be unfair to other test takers. NBME seeks the Court's guidance on an expedited basis in an effort to comply in good faith with the Court's preliminary injunction order. If the Court instructs NBME to release Plaintiff's score on September 4, 2019, NBME respectfully seeks a stay of the injunction as so clarified pending appeal.

---

[2] Scores are not released by NBME on that date (August 30). As noted, NBME anticipates that Plaintiff's score would be reported to her on September 4, 2019, the same date other scores would be reported, if the Court clarifies that its injunction was intended to include a requirement that NBME report her accommodated score.

145365132.2

## II.   If the preliminary injunction was intended to include reporting Plaintiff's score, the injunction should be stayed pending appeal to the Fifth Circuit.

Federal Rule of Civil Procedure 62 permits the Court to "suspend . . . an injunction" while an appeal is pending. Fed. R. Civ. P. 62(d). This Court must consider four factors when deciding whether to grant a stay pending appeal: (1) whether the applicant has made a strong showing of likelihood of success on the merits; (2) whether the applicant will be irreparably harmed absent a stay; (3) whether issuing the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 426 (2009)).

### A.   There is a strong likelihood that NBME will succeed on the merits.

Plaintiff is not "disabled," and NBME respectfully submits that it is likely to succeed on appeal. The grant of a preliminary injunction is reviewed for abuse of discretion, but questions of law—including mixed questions of law and fact—are reviewed *de novo*. *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009). Whether an individual is disabled under the ADA is a mixed question of law and fact, and thus reviewed *de novo*. *Mann v. La. High Sch. Athletic Ass'n*, 535 F. App'x 405, 410 (5th Cir. 2013) (unpublished) (reversing grant of preliminary injunction).

"Disability" is a legal term of art, tied to substantial impairment relative to most people, not elite peer groups at college or medical school or elite professional settings. "Disability" requires "a physical or mental impairment that substantially limits one or more of the major life activities," or "a record of such an impairment." 42 U.S.C. § 12102(1)(A)-(B). An impairment is only a disability "if it substantially limits the ability of an individual to perform a major life activity as *compared to most people in the general population*." 28 C.F.R. § 36.105(d)(1)(v) (emphasis added); *see also* § 36.105(e)(2). And while the ADA, as amended, should be construed to provide "broad coverage," the Fifth Circuit has stressed that "Congress[] . . . in no

way eliminated the term ['disability'] from the ADA or the need to prove a disability[.]" *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 245 & n.4 (5th Cir. 2013).

Plaintiff has essentially received a diagnosis of a "reading disability" based upon low performance on a single one-minute test that compared her to an elite slice of students, not the general population.  Thus, this Court incorrectly determined that "[t]he evidence and testimony clearly support that Plaintiff has an impairment that substantially limits her in the major life activities of reading when compared to most people in the general population." ECF 20, at 7. No evidence supports the "compared to most people" part of that finding.  Plaintiff's evaluations and academic history show that her reading ability is, at worst, average. *See Black v. Nat'l Bd. of Med. Exam'rs*, 281 F. Supp. 3d 1247, 1249 (M.D. Fla. 2017) ("Of course, average (or above-average) performance presumptively establishes the absence of a substantial limitation.").

As an initial matter, Plaintiff's diagnoses—even assuming for purposes of this Motion that they were proper—cannot alone establish she is disabled.  *See* 28 C.F.R. § 36.105(d)(1)(v) ("[N]ot every impairment will constitute a disability[.]"); *Glueck v. Nat'l Conference of Bar Exam'rs*, No. SA-17-CV-451-XR, 2018 WL 3977891, at *4 (W.D. Tex. Aug. 20, 2018) ("[T]he diagnosis of an impairment, alone, is not enough to show that a person is disabled under the ADA[.]" (citing *Mann*, 535 F. App'x at 411)).  This Court concluded that Plaintiff has a history of impairments, struggled to overcome them, and had good reasons for not seeking accommodations earlier.  *See* ECF 20, at 7.  But even if true, none of that matters if Plaintiff's alleged impairments do not substantially limit her ability to read compared to most people.

She is not impaired compared to most people, and her briefing to this Court badly misstated the evidence.  Plaintiff proffered *no evidence* her reading abilities fall below average in

the general population. In reaching the opposite conclusion (in line with Plaintiff's inaccurate characterizations of the evidence), this Court miscited two of Dr. Brockman's findings.

First, the Court referred to Dr. Brockman's conclusion that Plaintiff's "reading ability was . . . as low as just the 6th percentile of the general population on the Nelson Denny Reading Test ["NDRT"]." *Id.* That finding is clearly erroneous because she was not compared to the "general population." The NDRT is "unique in that the percentile scores are *not based on the normal population* but the educational level that most closely resembles the individual being tested." ECF 1-5, at 41 (emphasis added) (stressing that Plaintiff "was compared with other graduates NOT the 'normal' population"). And—implicitly conceding Plaintiff does not read below average—Dr. Brockman argued NBME's reading of the ADA was "outdated" and Plaintiff "should be assessed in comparison to her fellow medical students sitting for the USMLE Step 2 Test." *Id.* at 43. Similarly, Plaintiff did not argue her reading level is below average compared to most people, but rather that she should be compared to her peers. ECF 2, at 7-9.

Second, the Court erroneously cited Dr. Brockman as finding that Plaintiff's "reading 'decoding' speed [is] slower than 75% of students against the general population." ECF 20, at 3. That finding is also clearly erroneous because it was an isolated subtest score and did not compare her to the "general population" in all events. Plaintiff's "decoding speed . . . was slower than 75% of students her age." ECF 1-4, at 30. Presumably, the Court inaccurately stated Dr. Brockman's findings because Plaintiff's post-hearing brief misstated that "[o]n the Nelson Denny subset, Meaghan's Reading Speed fell in the borderline or slow learner range at the 6th Percentile of all readers," and "her reading 'decoding' speed was slower than 75% of students against the general population." ECF 14, at 3 (citation omitted). As discussed above, those assertions conflict squarely with Dr. Brockman's findings.

There was thus no basis to conclude Plaintiff is disabled under the ADA. In fact, the record compels the opposite conclusion: Plaintiff is a bright, talented individual whose reading abilities are, at worst, average and likely above average. The mandatory injunction—which "should not [have] issued unless the facts and law clearly favor[ed] the moving party," and is "particularly disfavored," *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976)—was granted on findings urged by Plaintiff that are easily shown to be clearly erroneous.[3]

### B. NBME and other test takers will be irreparably harmed absent a stay.

NBME is irreparably harmed when awarding "potentially unfair accommodations on [an] exam before a merits determination will affect the comparable validity of the scores of the other examinees, and [it] has no remedy once it reports [the] scores." *Bach v. Law School Admission Council*, No. 1:13-cv-888, 2014 U.S. Dist. LEXIS 124632, at *7 (M.D.N.C. Feb. 4, 2014).

Here, releasing Plaintiff's score before the merits of the preliminary injunction can be reviewed on appeal will impact the scores of other Step 2 CK examinees and their residency applications. Plaintiff will immediately request that NBME submit her Step 2 CK score to ERAS as part of her application to residency programs, which will in turn rely on the results as early as September 15. Decl. ¶¶ 11-13. Plaintiff admitted at the preliminary injunction hearing that if she is accepted to a residency program based on the Step 2 CK score she received with

---

[3] Plaintiff's outstanding test scores earned under standard conditions only bolster the conclusion that Plaintiff is not disabled. *See e.g.*, *Black*, 281 F. Supp. 3d at 1249-50 ("[Plaintiff's] history of superlative academic performance refutes the claim that ADHD substantially limits Black's ability to learn . . . in comparison to the average person."); *Bibber v. Nat'l Bd. of Osteopathic Med. Exam'r, Inc.*, No. CV 15-4987, 2016 WL 1404157, at *8 (E.D. Pa. Apr. 11, 2016) ("[Plaintiff's] confidence in taking those exams without even attempting to receive accommodations speaks volumes about whether her dyslexia is substantially limiting when compared to high achieving groups of people, let alone the general population."); *Singh v. George Wash. Univ. Sch. of Med. & Health Scis.*, 597 F. Supp. 2d 89, 95 (D.D.C. 2009) (rejecting possibility that Plaintiff's "enormous success in other reading and comprehension tasks—undoubtedly some of them timed—is consistent with a reading disorder which primarily manifests itself in limiting her reading speed"), *aff'd*, 667 F.3d 1 (D.C. Cir. 2011).

accommodations, her position will come at the expense of another applicant. ECF 15, at 24.

The mandatory injunction will thus undermine the integrity of the test, fairness of the residency selection process, and NBME's "duty to ensure that its examination is fairly administered to all those taking it." *Powell*, 364 F.3d at 88–89; *see Bach*, 2014 LEXIS 124632, at *7. NBME will be irreparably harmed. *See Rothberg v. Law Sch. Admission Council*, 102 F. App'x 122, 123, 126 (10th Cir. 2004) (unpublished) (overturning preliminary injunction that allowed plaintiff to take the Law School Admission Test with extra testing time, after staying the preliminary injunction, and noting that LSAC would be irreparably harmed if the accommodated test score were released). Other test takers who lose out because of Plaintiff's unfair score will also be irreparably harmed.

### C.     A stay will not substantially harm Plaintiff.

By contrast, Plaintiff will not be substantially harmed if she cannot immediately apply for residency positions with a Step 2 CK score in hand. She has until April 2020 to pass the Step 2 CK (or later if she requests a leave of absence), ECF 1-8, at 32, and until February 26, 2020 to verify her credentials, including a passing Step 2 CK score, for the upcoming residency "Match" process, *id.* at 36. Tulane "recommend[s]" that students take the Step 2 CK "before December 31 of their senior year to participate in the [residency] Match." *Id.* at 32. It is difficult to imagine Tulane would recommend taking the exam by December 31 if, as Plaintiff asserts, doing so would substantially harm her prospects in the residency application process.

Regardless, Plaintiff would not be significantly harmed even if she had to wait a year to apply for a residency position, the next part of her graduate medical education. Any alleged harm associated with the potential delay is unduly speculative. *See Doe v. N.Y. Univ.*, 666 F.2d 761, 773 (2d Cir. 1981) (holding that "a one-year delay in obtaining admission to a graduate school" was "insufficient to warrant an injunction"); *Rothberg*, 102 F. App'x at 125 (reasoning

that "an order mandating that LSAC report her accommodated score to various law schools" was not needed, as "[n]othing requires [her] to apply to law schools now"); *Bach*, 2014 U.S. Dist. LEXIS 124632, at *6 ("[D]elayed entry to law school is not the kind of harm that warrants mandatory injunctive relief." (citation omitted)).

The uncertainty of any harm is amplified by Plaintiff's strong past performance on standardized tests and passing score on the Step 1 exam, suggesting that she would likely have passed the Step 2 CK exam with no accommodations. *See Kelly v. W. Va. Bd. Of Law Exam'rs*, No. 2:08-cv-00933, 2008 U.S. Dist. LEXIS 56840, at *6-7 (S.D.W. Va. July 24, 2008) (insufficient showing of harm where plaintiff had done well on tests without accommodations); *Baer v. Nat'l Bd. of Med. Exam'rs*, 392 F. Supp. 2d 42, 49 (D. Mass. 2005) ("[I]t is not certain that she will suffer the predicted harm; she may pass the test."). In addition, Plaintiff testified that she automatically gets an interview with Tulane's residency program—one she is interested in—even without a Step 2 CK score, which only heightens the speculative nature of her alleged harm. *Cf. Doe v. Ohio State Univ.*, No. 2:15-CV-2830, 2016 WL 692547, at *11 (S.D. Ohio Feb. 22, 2016) ("If he does [obtain a residency], it would be, on this record, mere speculation as to whether that residency would be of lesser value to him than any residency he would get if he were able to represent to various residency programs that he was a student in good standing," and, "[e]ven if that were true, there is no evidence in this record about how the difference in the quality of a residency would play out over the course of a career[.]").

Moreover, no harm will result in maintaining the status quo because, as discussed above, Plaintiff is not disabled under the ADA and the mandatory preliminary injunction based on that finding was improper. *See supra*, Part II(A).

145365132.2

### D. The public interest favors a stay.

The public interest also weighs in favor of staying the injunction pending appeal. Like NBME, the public "has an interest in the fair administration of standardized tests." *Bach*, 2014 U.S. Dist. LEXIS 124632, at *8; *see Campbell v. Lamar Inst. of Tech.*, 842 F.3d 375, 381 (5th Cir. 2016) (concern that plaintiff "might obtain an unfair advantage over other students by having an extra two weeks to study" was a legitimate and "serious" reason for denying accommodations). If residency programs rely on a score Plaintiff received with an unwarranted accommodation, it will unfairly advantage Plaintiff to the detriment of other Step 2 CK examinees, residency applicants, and residency programs. Because this includes residency applicants who have legitimate disabilities within the meaning of the ADA, the lower court's preliminary injunction will harm the very population the ADA is designed to protect.

## CONCLUSION

For the foregoing reasons, NBME moves this Court to clarify whether the Court intended the preliminary injunction to require NBME to report in the ordinary course Plaintiff's Step 2 CK score to Plaintiff, submit the score to ERAS, or report it to other third parties, once the score becomes reportable. If so, NBME requests that the Court stay the preliminary injunction pending appeal to the Fifth Circuit and issue an expedited ruling by August 26, 2019.

Dated: August 22, 2019             Respectfully submitted,

                                   By: /s/ Robert A. Burgoyne
                                       Robert A. Burgoyne (*Admitted Pro Hac Vice*)
                                       Perkins Coie LLP
                                       700 Thirteenth Street, N.W. Suite 600
                                       Washington, DC  20005-3960
                                       Tel: 202-654-1744
                                       Fax.: 202-624-9548
                                       RBurgoyne@perkinscoie.com

                                   *Counsel for National Board of Medical Examiners*

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2019, a copy of the foregoing Memorandum in Support of Expedited Motion to Clarify and, If Necessary, for a Stay Pending Appeal, was filed by email with the Clerk of the Court. Notice of this filing will be sent to all counsel of record by email.

Dated: August 22, 2019 Respectfully submitted,

By: /s/ Robert A. Burgoyne
Robert A. Burgoyne (*Admitted Pro Hac Vice*)
700 Thirteenth Street, N.W. Suite 600
Washington, DC 20005-3960
Tel: 202-654-1744
Fax.: 202-624-9548
RBurgoyne@perkinscoie.com

*Counsel for National Board of Medical Examiners*