UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| MEAGHAN DOHERTY | * | CIVIL ACTION NO. |
| --- | --- | --- |
| | * | |
| VERSUS | * | JUDGE: |
| | * | |
| NATIONAL BOARD OF | * | MAGISTRATE: |
| MEDICAL EXAMINERS | * | |

* * * * * * * * * * * * * * * * * * *

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S EXPEDITED MOTION TO
CLARIFY, AND IF NECESSARY, FOR A STAY PENDING APPEAL**

**I. Refutation of Defendant's Arguments**

Plaintiff, Meaghan Doherty, opposes defendant's motion to clarify and its motion for a stay, as defendant is seeking to circumvent the Court's preliminary injunction and render the purpose of the ADA and injunctive relief pointless. Plaintiff has filed her own Motion to Clarify with a Memorandum in Support addressing these issues and will not repeat those arguments here. However, there are several arguments contained in defendant's motion, which should be addressed. Defendant points to the fact that Dr. Brockman's eighteen-page report mistakenly refers to plaintiff's receipt of accommodations throughout her elementary and high school years. In fact, the accommodations were recommended, but plaintiff declined to request them for fear of being stigmatized and instead used other methods to overcome her disability. Plaintiff testified specifically on this point at the preliminary injunction hearing and the Court noted this in its reasons for judgment.

Defendant complains about the short time it had to present its case, however defendant ignores the fact that its own procedures and delays for ruling on accommodations place students

1

like plaintiff in the untenable position of having to litigate their right to an accommodation with barely three weeks' time between the time the student learns that their accommodation request is denied and the date the student planned to take the test. Further, plaintiff had actual notice of plaintiff's Application for a Preliminary Injunction and her supporting documents, nine days before the hearing. This was certainly enough time for a sophisticated national organization, who has litigated these issues previously in other parts of the country, to put forth their defense.

Defendant callously states that "[i]n medical school, when she was no longer at the top of her class, Plaintiff went to see a psychologist, Dr. Brockman, for an evaluation so she could 'request accommodations." Defendant portrays plaintiff as an undeserving grade-seeker, who desires unfair advantages over other students. Defendant conveniently ignores that plaintiff's parents had her evaluated in elementary school, when her grades were high but her standardized test scores revealed that something was amiss regarding her reading and spelling skills. It was then, when Plaintiff discovered that she had a diagnosis of dyslexia.

Defendant also argues that plaintiff's NBME Step 1 scores showed that plaintiff's passing, but "lower-than desired" score reflected poor performance on three subjects, not a shortage of time. Defendant argues that granting an accommodation as required by the ADA is somehow unfair to other test takers and injures the integrity of the process. Defendant completely ignores that once plaintiff obtained the accommodation of additional time while taking NBME Step 1 & 2 type tests in medical school, her scores improved by roughly 20%. Further, defendant ignores the obvious. If a student who doesn't know the material, takes a test with lengthy fact scenarios including symptoms etc. followed by a question about what diagnoses and treatments are warranted, her score is not going to be improved by the grant of additional time. The additional time will not magically produce correct answers. The only way

the additional time would increase a student's score is if the student has a disability that impacts her ability to read quickly enough to read the entire factual scenario. Such is the case here. And in such cases, the ADA requires the accommodation so that the student with a disability can demonstrate her competence and knowledge and not her disability.

Now that defendant has evinced its intent not to send plaintiff's test results timely, Plaintiff agrees that this Court's order should be modified, however the Order should be modified to order that defendant is required to provided plaintiff's test scores to Plaintiff by August 30, 2019. See the Proposed Order Attached to Plaintiff's Rule 60(a) Motion to Clarify Order of August 5, 2019.

Plaintiff believes that NBME has the ability to produce the test scores to Plaintiff by August 30, 2019. The test is administered online with a code the test taker types into the NBME online website. The entire test is taken by computer and is multiple choice. The NBME website offers many practice tests from past Step tests for students to take online in their own home. Each of these tests, as soon as it is completed by the student, is instantly graded by the computer and the results flash on the screen for the test taker. This is no different from the computer-based test for the Multi-State Bar Exam, the MPRE, the GMAT, and most other professional and graduate school entrance exam tests. It is absurd to suggest that the Step 2 CK Exam takes four weeks to grade. The score is available and under the control of the NBME from the moment the student completes the exam. However, this claim, is completely in line with Defendant's claim that it usually takes the NBME 3-4 days to change a student's test registration from a one-day test to a two-day test. Oddly, it was accomplished by the Metairie Testing Center by the General Manager stating "Ok, I'll just add another chair and make sure we have a computer terminal available for her." That's all it took for the testing center. Then it only took 30 minutes for the

NBME services department to email Plaintiff her new "testing code" for the Step 2 CK Exam with extra time built into it. The point is that all of these tests are computerized and pre-set. It is misleading to suggest that there is some manual, time-consuming, complicated process by which these things are changed or graded. Despite Defendant's affidavit from Dr. Michael Barone, it is simply NBME policy to wait four week or more before "reporting" test scores to students. It is also significant to note the wording the NBME uses here: the affidavit doesn't claim that it takes four week to grade the test; it states it takes four weeks to "report" the results to the student. NBME does nothing to counteract the implication that it is a four-week grading process. The bottom line is that the NBME is in control of this entire process, and as the events of Monday afternoon, August 5, 2019 established, when cornered by the facts from the testing center, the NBME is able to make things happen within minutes.

## II. Defendant is not Entitled to a Stay

By its motion to Stay the reporting of Plaintiff's Step 2 CK Exam score, Defendant is attempting to circumvent this Court's Order of August 5, 2019 granting the preliminary injunction and ordering NBME to provide testing accommodations to Plaintiff on August 6. In effect, NBME is saying, Plaintiff got her accommodations, but she can't have her test scores. This is a direct negation of the Court's findings that Plaintiff is disabled and entitled to test accommodations under the ADA Amendments Act. It also directly perpetuates the harm she suffers in not being able to timely apply for the Residency Programs which is the entire reason for urgency in this case. Defendant continues to try to find a way around the Court's order by holding Plaintiff's test scores hostage pending its appeal of this Court's Order of August 5. This will allow Defendant to continue to discriminate against Plaintiff with impunity and in disregard

the ADA Amendments Act and the findings and order of this Court.

It appears that NBME's arguments do not square with the facts

(1) In its Memorandum in Support of Defendant's Motion for Expedited Motion to Clarify at p. 6. Defendant asserts that NBME went to "extraordinary efforts" to see that it complied with this Court's Order of August 5, 2019. Defendant asserts incorrectly that its "extraordinary efforts" included "changing her [Plaintiff's] test registration from a one-day to a two-day test administration – a process which typically takes multiple days to accomplish – and requesting that the third-party entity that administers the test keep one of its testing centers open after normal hours to permit Plaintiff to test). This is factually incorrect in the following, specific ways:

1. At 2:00 p.m., August 5, 2019, two hours after the Court issued its Order, Plaintiff's counsel had the General Manager of the Metairie Testing Center (NBME's third-party testing proctor) personally served with a copy of this Honorable Court's Order for testing accommodations. The General Manager, Barry, stated that:

(a) He would be able to comply with the order, that all he needed was for NBME to provide Plaintiff with the correct "testing code" that would allow Plaintiff to download the Step 2 CK Exam with extra time accommodations of (x1.5).

(b) He also stated he could easily provide Plaintiff with a place and computer to take the test on the second day with no inconvenience to the testing center.

(c) He further stated that the testing center would be able to accommodate Ms. Doherty's testing on the second day and that he may need to have one employee work an additional two hours, yet still close the testing center by 1:30 p.m., it's expected closure time for that day.

All of this was determined prior to any contact from the NBME regarding even its

acknowledgment of the Court's Order for accommodations. Further, when NBME finally contacted Plaintiff's counsel by email, NBME stated that it would not be able to provide the test to Plaintiff until August 22-23, 2019. (See attached emails exchanged between Plaintiff's Counsel and Defense Counsel, Exhibit A, p. 10 (Burgoyne to Olivier, 8/5/19 2:25 CST) and Ex. A, p. 12 (Burgoyne to Olivier. 8/5/19 2:44 CST) "They [testing center] can't administer the exam to her tomorrow with time and half. Nor can the exam be administered to her on Aug. 7 and 8 either at the Metairie testing sites." (Ex. A, p. 12). That was Defendant's final offer as conveyed in its email and in a phone conversation between Plaintiff's counsel McGoey and Defense counsel Burgoyne.

It was only after Plaintiff's counsel informed the NBME that counsel had served the testing center and had received assurances from the Testing Center General Manager that the test could be easily provided to Ms. Doherty, that NBME changed its tune and stated that it was unlikely that the NBME could provide the proper accommodations test in time for the test the next day. At 4:02pm CST, NBME emailed Plaintiff's counsel that "NBME s working with their IT department to see if they can manually override the normal system and get a new permit issued tonight…This is highly unusual, and it is late in the day, it remains to be seen whether this can be accomplished, but NBME is cautiously optimistic that it will be." (Ex. A, p. 16) A mere twenty-nine minutes later, Ms. Doherty received an email from NBME with her new test code & permit. (Ex. A, p. 19 (Disability Services/NBME to Meaghan Doherty at 4:31pm CST).

In short, from the beginning of this lawsuit, NBME has operated in a pattern of consistent delay to thwart Plaintiff's pursuit of the accommodations afforded by the ADA and even once the Court awarded her those accommodations. NBME asserts that it was served with the underlying Application for Temporary Restraining Order only two days before the hearing. What NBME

Thursday during which Defense counsel stated he did not know if he was authorized to accept service. If Defense counsel ever received an answer to that question, it was not communicated to Plaintiff's counsel. Thus, on Monday, July 29, the first business day after receiving the Court's order setting the matter for hearing on August 1, Plaintiff had NBME served with all pleadings. The same pleadings that plaintiff delivered to NBME at its corporate offices by FedEx on July 23, 2019. There has been a pattern of delay continued until its bluff was called by the information from the Test Center General Manager.

Defendant cannot meet the U.S. 5th Circuit's standard for staying a preliminary injunction. In Texas v. U.S. 787 F.3d 733, (5th Cir. 2015), the Fifth Circuit set forth the analysis to be used in deciding whether to grant a stay of a preliminary injunction order. The Court noted:

> We consider four factors in deciding whether to grant a stay pending appeal: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

The Court went on to note that for the appellant seeking the stay to obtain the stay, it must show that the district court abused its discretion by entering a preliminary injunction. The Court further explained that a decision "grounded in erroneous legal principles is reviewed de novo," and findings of fact are reviewed for clear error. Ultimately, a "stay 'is not a matter of right, even if irreparable injury might otherwise result to the appellant.'"

Here defendant NBME cannot meet any of the factors. First, NBME cannot show a strong likelihood of success, as this was the standard for plaintiff to meet at the injunction hearing and this court correctly found that plaintiff demonstrated a substantial likelihood of success. It is unnecessary for plaintiff to repeat the well-reasoned opinion of the Court here.

Second, defendant NBME cannot show any irreparable harm. The result of the injunction is a requirement that the NBME follow the express requirements of the ADA. There is no harm to the NBME by following the order of the court granting the accommodation plaintiff proved was warranted by the law and facts. Third, there is no injury to other parties interested in the proceeding. Defendant NBME can point to no such injury. To argue that a non-disabled student is injured by the grant of a reasonable accommodation to a student with a disability is absurd. Fourth, the public interest lies in favor of the end of discrimination against persons with disabilities. Accordingly, defendant NBME is not entitled to a stay. Quite to the contrary, a stay would frustrate the purposes of the ADA and injunctive relief.

Respectfully submitted,

WILLIAM MARTIN MCGOEY, Esq., LSBA #14205
1828 Rose Street
Arabi, Louisiana 70032
Telephone: 504-250-3293
bmcgolaw@yahoo.com

FRANCES M. OLIVIER, ESQ. LSBA No. 17895
2341 Metairie Road
Metairie, Louisiana 70001
Telephone: 504-483-6334; Fax: 504-483-6344
folivier@olivierlawfim.com

Attorneys for Plaintiff Meaghan Doherty

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above has been forwarded to all parties of record via Electronic Email or U.S. Mail on August 23, 2019.

WILLIAM MARTIN MCGOEY

8